**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| NATHAN C. SILVA, Derivatively on Behalf of Nominal Defendant MICRON TECHNOLOGY, INC., | Case No. _____ |
| Plaintiff, | |
| v. | **DEMAND FOR JURY TRIAL** |
| SANJAY MEHROTRA, RICHARD M. BEYER, LYNN A. DUGLE, STEVE GOMO, LINNIE HAYNESWORTH, MARY PAT MCCARTHY, BOB SWAN, MARYANN WRIGHT, and MARK MURPHY, | |
| Defendants, | |
| and | |
| MICRON TECHNOLOGY, INC., | |
| Nominal Defendant. | |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

Plaintiff Nathan C. Silva ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant Micron Technology, Inc. ("Micron" or the "Company"), against certain current and former members of the Company's Board of Directors (the "Board") and certain of its executive officers seeking to remedy the Individual Defendants' (defined below) breaches of fiduciary duties and violations of federal law.  Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' publicly available documents, United States Securities and Exchange Commission ("SEC") filings, press releases published by and regarding Micron, legal filings, news reports, securities analysts' reports about the Company, and other publicly available information.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought by Plaintiff on behalf of Micron against certain of its officers and current and former members of the Board (the "Individual Defendants")[1] for breaching their fiduciary duties by consciously, intentionally, and/or recklessly allowing the Company to operate without sufficient controls and in blatant and obvious violation of the law, including federal securities laws.

2.      Between at least September 28, 2023 and December 18, 2024 (the "Relevant Period"), the Individual Defendants intentionally and/or recklessly allowed the dissemination of materially false and misleading statements and omissions – including in connection with the

---

[1] The "Individual Defendants" are Sanjay Mehrotra, Richard M. Beyer, Lynn A. Dugle, Steve Gomo, Linnie Haynesworth, Mary Pat McCarthy, Bob Swan, MaryAnn Wright, and Mark Murphy who are sometimes referred to herein by their last names. "Defendants" means Micron and the Individual Defendants.

Company's 2023 proxy statement filed with the SEC on November 29, 2023 (the "Proxy") – and in other public statements that have exposed the Company to massive damages.

3.      Not all of the Company's stockholders were harmed by the Individual Defendants' misconduct.   During the Relevant Period, Defendant Sanjay Mehrotra ("Mehrotra"), the Company's President, Chief Executive Officer ("CEO"), and a member of the Board sold 690,284 shares of Micron common stock at significantly inflated prices under highly suspicious circumstances following the misappropriation of the Company's material non-public information ("MNPI") for total proceeds of over $70 million.   Mehrotra – who did not make any sale of Company stock prior to the beginning of the Relevant Period – structured and timed these sales motivated by knowledge of MNPI and the issues facing Micron.   Mehrotra understood time was running out for Micron, prompting him to seize on the opportunity to take advantage of Micron's inflated stock price while knowing that once the truth was revealed, the Company's stock value would fall significantly.

4.      Micron designs, develops, manufactures, and sells memory and storage products, including, *inter alia*, dynamic random access memory ("DRAM"), NAND, NOR, and high-bandwidth memory ("HBM") semiconductor devices.

5.      Micron's memory and storage products are sold in various markets, with sales reported across multiple of its business units. These markets include those for consumer technologies such as personal computers ("PCs"), smartphones, tablets, cameras, and the like, as well as for commercial and industrial applications, such as in manufacturing environments and data centers. Examples of memory and storage products for consumers include, *inter alia*, NAND flash memory devices, such as solid-state drive ("SSD") cards and flash drives.

6.      As Micron has noted in its regulatory filings, "[t]he memory and storage industry

environment deteriorated sharply in the fourth quarter of 2022 and throughout 2023 due to weak demand in many end markets combined with global and macroeconomic challenges and lower demand resulting from customer actions to reduce inventory levels[,]" which "led to significant reductions in average selling prices for both DRAM and NAND and bit shipments for DRAM, resulting in declines in revenue across all [of Micron's] business segments and nearly all [of its] end markets." Throughout the Relevant Period, however, Defendants repeatedly assured investors that demand for Micron's products, including its consumer-oriented and NAND products, was recovering, as well as assured investors that the Company was on track for record revenues in its fiscal year 2025 as a result of the foregoing and, *inter alia*, artificial intelligence- ("AI") related tailwinds for its HBM products.

7.     Throughout the Relevant Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made or permitted others to make false and/or misleading statements and/or failed to disclose that: (i) Defendants did not establish or maintain sufficient internal controls; (ii) demand for Micron's products in consumer markets, especially the Company's NAND products, had significantly deteriorated; (iii) accordingly, Defendants had overstated the extent to which demand for Micron's products had recovered, particularly in consumer markets and for its NAND products, and/or had overstated the sustainability of demand for such products, as well as the normalization of inventory for such products; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

8.     On December 18, 2024, Micron issued a press release announcing its financial results for the first quarter of its fiscal year 2025. Among other items, the Company reported a greater-than-expected revenue decline in NAND flash memory for the quarter. Micron also issued

disappointing guidance for the second quarter of its fiscal year 2025, including adjusted earnings between $1.33 and $1.53 per share, well below the $1.92 per share estimate; sales between $7.7 billion and $8.1 billion, with the midpoint well below the $8.99 billion estimate; and adjusted gross margins between 37.5% and 39.5%, well below the 41.3% estimate; citing weakness in the Company's consumer-oriented markets.

9.      The next day, multiple analysts lowered their price targets for Micron stock, citing the Company's disappointing guidance for the second quarter of its fiscal year 2025, while noting significant weakness in demand in its consumer markets, especially for its NAND products.

10.     Following these developments, Micron's stock price fell $16.81 per share, or 16.18%, to close at $87.09 per share on December 19, 2024.

11.     The Individual Defendants also failed to implement adequate controls and reporting systems respecting compliance, inventory, demand, and the accuracy of its public reports.

12.     The Individual Defendants repeatedly failed to take red flags seriously and delayed the implementation of appropriate internal controls to ensure the Company operated in compliance with the law. The Individual Defendants willfully ignored, or recklessly failed to inform themselves of, the obvious problems with the Company's internal controls, practices, and procedures, and failed to make a good faith effort to correct the problems or prevent their recurrence.  As detailed herein, the Individual Defendants were on notice and/or became aware of risks that Micron was violating the law or was otherwise headed for a corporate trauma, but did nothing in response. The Individual Defendants had numerous opportunities to address the Company's noncompliance and lack of reporting protocols and information controls. By failing to make a good faith effort to implement and monitor an oversight system and by consciously

disregarding their duty to learn of and investigate red flags, the Individual Defendants failed to exercise due care and failed to satisfy their duty of loyalty to the Company and its stockholders.

13.     The Company has been substantially damaged as a result of the Individual Defendants' knowing or reckless breaches of fiduciary duty and other misconduct. A federal securities class action case was filed in the United States District Court for the Southern District of Florida against the Company as well as certain of the Individual Defendants, exposing Micron to massive class-wide liability (the "Securities Class Action").

14.     Additionally, according to the Company's annual report for the year ended August 29, 2024, filed with the SEC on Form 10-K on October 4, 2024, Micron spent over $300 million on share repurchases in 2024, while the price of the Company's common stock was artificially inflated as a result of these false and misleading statements issued, or caused to be issued by the Individual Defendants. As a result, Micron was damaged through its repurchases of Company common stock at prices artificially inflated by the materially false and misleading statements.

15.     Plaintiff did not make a demand on the Board because, as further detailed herein, demand would be a futile and useless act.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") over the claims asserted herein for violations of Section 14(a) and 10(b) of the Exchange Act (15 U.S.C. §§ 78n(a) and SEC Rule 14a-9 (17 C.F.R.§240.14a-9) promulgated thereunder.

17.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

18.     This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

19.     This Court has personal jurisdiction over each of the Defendants because each Defendant is either a corporation conducting business and maintaining operations in this District, or he or she is an individual who is a citizen of Florida or who has minimum contacts with this District to justify the exercise of jurisdiction over them.

20.     Venue is proper in this District pursuant to Section 27(a) of the Securities Exchange Act and 28 U.S.C. §1391(b)(1), as Micron is headquartered within this District.

## PARTIES

*Plaintiff*

21.     Plaintiff is, and has been at all relevant times, a shareholder of Micron.

*Nominal Defendant*

22.     Nominal Defendant Micron is incorporated under the laws of Delaware with its principal executive offices located in Palm Beach County, Florida.

*The Individual Defendants*

23.     Sanjay Mehrotra has served as Micron's President, CEO, and a Director of the Company since 2017.  On January 16, 2024, in light of the retirement of Robert E. Switz, Mehrotra became Chair of the Board.  During the Relevant Period, Defendant Mehrotra sold 690,284 shares of Micron common stock for total proceeds of over $70 million.  Mehrotra is a member of the Finance Committee.

24.     Richard M. Beyer has served as a Company director since 2013.  Beyer is Chair of the Compensation Committee.  Beyer is a member of the Governance and Sustainability Committee.  Beyer is a member of the Security Committee.

6

25.     Lynn A. Dugle has served as a Company director since 2020.  Dugle is a member of the Governance and Sustainability Committee.  Dugle is a member of the Security Committee. On January 16, 2024, in light of the retirement of Robert E. Switz, Dugle became Lead Independent Director.

26.     Steve Gomo has served as a Company director since 2018.  Gomo is a member of the Audit Committee.  Gomo is Chair of the Finance Committee.

27.     Linnie Haynesworth has served as a Company director since 2021. Haynesworth is a member of the Audit Committee.  Haynesworth is a member of the Security Committee.

28.     Mary Pat McCarthy has served as a Company director since 2018.  McCarthy is the Chair of the Audit Committee.  McCarthy is a member of the Finance Committee.

29.     Bob Swan has served as a Company director since March 2024. Swan is a member of the Audit Committee.  Swan is a member of the Finance Committee.

30.     MaryAnn Wright has served as a Company director since 2019.  Wright is a member of the Compensation Committee.  Wright is Chair of the Governance and Sustainability Committee.

31.     Mark Murphy has served as Micron's Executive Vice President and Chief Financial Officer at all relevant times.

**FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS**

32.     By reason of their positions as officers and/or directors of Micron, and because of their ability to control the business and corporate affairs of Micron, the Individual Defendants owed Micron and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Micron in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in

7

furtherance of the best interests of Micron and its shareholders so as to benefit all shareholders equally.

33.     Each director and officer of the Company owes to Micron and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

34.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Micron, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

35.     To discharge their duties, the officers and directors of Micron were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

36.     Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Micron, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

37.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the Nasdaq, the Individual Defendants had a duty to prevent and not to effect the dissemination of

inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

38.     To discharge their duties, the officers and directors of Micron were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company.  By virtue of such duties, the officers and directors of Micron were required to, among other things:

> (a) ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the United States, and pursuant to Micron's own Code of Conduct;

> (b) conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

> (c) remain informed as to how Micron conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

> (d) establish and maintain systematic and accurate records and reports of the

business and internal affairs of Micron and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e) maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Micron's operations would comply with all applicable laws and Micron's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f) exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g) refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h) examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

39.     Each of the Individual Defendants further owed to Micron and the shareholders the duty of loyalty requiring that each favor Micron's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

40.     At all times relevant hereto, the Individual Defendants were the agents of each

other and of Micron and were at all times acting within the course and scope of such agency.

41.     Because of their advisory, executive, managerial, and directorial positions with Micron, each of the Individual Defendants had access to adverse, non-public information about the Company.

42.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Micron.

43.     The Individual Defendants, because of their positions with Micron, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.  Each of the Individual Defendants was provided with copies of the Company's reports, presentations, and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

## MICRON'S CODE OF CONDUCT

44.     Micron's Code of Business Conduct and Ethics ("Code of Conduct"), which is incorporated herein by reference, applies to everyone in the Company, including the Board.

45.     The Code of Conduct states:

> We all play a role in ensuring the integrity of our financial books, records and disclosures. Whatever information you record for our Company — from hours worked to product inventory, travel expenses, tax records or accounting — you must help ensure that the

11

business information we report is accurate, complete and timely.

The information we record helps our Company plan for the future. It also informs the financial data we report to shareholders and regulators. To make sure our Company can plan correctly and that our shareholders and regulators (including taxing authorities) have accurate information, our books and records — whether paper or electronic — must always be complete and honest. They must fairly reflect our business assets, liabilities, expenses and revenue. We all have a duty to maintain our books and records in accordance with U.S. Generally Accepted Accounting Principles (GAAP) and any other regulatory requirements that apply to a multinational, publicly traded company. We also have a duty not to perform, and not to facilitate others in performing, any act of fraud or tax evasion.

46.     With respect to insider trading, the Code of Conduct states:

While working on behalf of Micron, you may become aware of material, nonpublic information about our Company, our owners, our customers or other companies. Material, nonpublic information (also known as inside information) is information about a company that is not known to the general public and that could influence a typical investor's decision to buy, sell or hold that company's securities. Information is no longer nonpublic when it has been widely disseminated to the public and a reasonable waiting period has passed so that the information has been absorbed by the marketplace.

Inside information can include information about any of the following:

- ▪ Financial results
- ▪ Projections of future earnings or losses
- ▪ Changes in manufacturing productivity or yields
- ▪ News of a proposed merger or acquisition
- ▪ Gain or loss of a substantial customer
- ▪ New products
- ▪ Changes in senior management
- ▪ Significant litigation
- ▪ Stock or debt offerings
- ▪ Stock splits
- ▪ Damage to or loss of material assets

Inside information can also relate to another company, a supplier or a customer that you obtained confidentially during the course of your work. Trading on material, nonpublic information violates insider trading laws. Anyone involved in insider trading could be

subject to disciplinary action, as well as potential civil or criminal penalties. It is also illegal to provide inside information to others (or tip them) to influence their investment decisions. Insider trading is taken very seriously. You may face penalties for misusing inside information even if the amount of money involved was small — or even if you made no profit at all.

47.     The Code of Conduct states:

To ensure that our communication is accurate and consistent, only certain designated team members are authorized to speak on Micron's behalf to the media and investment community. If you receive a request for an interview or information about our Company, politely decline to comment and refer the request to the Global Communications & Marketing department. For more information, review the Policy on Selective Disclosure of Material Non-Public Information (Regulation FD Policy) located on our global policy site (alias: policy/).

48.     The Code of Conduct states: "Acting ethically means that we must uphold our responsibility to follow all laws and regulations that apply to the work we do and to our location."

49.     In violation of the Code of Conduct, the Individual Defendants conducted little, if any, oversight of the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty.  Also, in violation of the Code of Conduct, the Individual Defendants engaged in insider trading and failed to maintain internal controls, failed to obtain waivers and/or failed to disclose obtained waivers of violating the Code of Conduct, and failed to comply with laws and regulations, conduct business in an honest and ethical manner, and properly report violations of the Code of Conduct.

**MICRON'S AUDIT COMMITTEE CHARTER**

50.     Pursuant to Micron's Audit Committee Charter, the committee's purpose is to "[a]ssist the Board in overseeing and monitoring [ ] the integrity of the Company's financial statements including the accounting and financial reporting processes and audits of the financial

statements, [and] the Company's compliance with legal and regulatory requirements…"   An additional purpose is to "[p]repare the report required by the Securities and Exchange Commission (the "SEC") to be included in the Company's annual proxy statement."

51.     Pursuant to its Charter, the Audit Committee is responsible for, *inter alia,* the following:

> The Audit Committee shall review and discuss with management and the independent auditors the annual audited financial statements and quarterly unaudited financial statements, including the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations," prior to filing with the SEC the Company's Annual Report on Form 10-K and Quarterly Reports on Form 10-Q, respectively, and recommend to the Board whether the audited financial statements should be included in the Form 10-K.

> The Audit Committee shall discuss with management and the independent auditor significant financial reporting issues and judgments made in connection with the preparation of the Company's annual and quarterly financial statements, including any (a) significant changes in the Company's selection or application of accounting principles, (b) major issues as to the adequacy of the Company's internal controls, and (c) special steps adopted by the Company in light of identified material control deficiencies.

> The Audit Committee shall discuss with management the Company's earnings press releases, including the use of "pro forma" or "adjusted" non-GAAP information, as well as financial information and earnings guidance. Such discussion may be done generally (consisting of discussing the types of information to be disclosed and the types of presentations to be made).

> The Audit Committee shall review annually, prior to the completion of the independent auditor's annual audit of the Company's year-end financial statements (the "Annual Audit"), the independent auditor's report that describes (a) the critical accounting policies and practices to be used in the Annual Audit, (b) all alternative treatments of financial information within generally accepted accounting principles that have been discussed with management, ramifications of the use of such alternative disclosures and treatments on the Company's financial statements, and the treatment preferred by the independent auditor, (c) critical audit matters identified by the independent auditor, if any, and (d) other material

written communications between the independent auditor and management. Review annually any reports on such topics or similar topics prepared by management.

The Audit Committee shall review periodically, with the Company's Chief Compliance Officer or his or her designee, the Company's compliance with material legal and regulatory requirements.

The Audit Committee shall review and discuss with management and the internal audit function the controls, procedures and processes that the Company has in place to ensure the accuracy of its material disclosures and reporting relating to environmental, social and governance matters, including any assurance provided by the independent auditor or other third party.

The Audit Committee shall establish procedures for: (a) the receipt, retention, and treatment of complaints received by the Company regarding accounting, internal accounting controls or auditing matters; and (b) the confidential, anonymous submission by employees of the Company of concerns regarding questionable accounting or auditing matters.

The Audit Committee shall oversee compliance with the SEC requirements for disclosure of auditor's services, fees, Audit Committee member qualifications and activities.

The Audit Committee shall meet separately, and periodically, with the leader of the Company's Internal Audit Department to review the results of the internal audit program, including significant issues in internal audit reports and responses by management.

52.     The Individual Defendants violated the Audit Committee Charter by engaging in or permitting the Company to engage in the scheme to issue materially false and misleading statements to the public, including in the Company's SEC filings, and by facilitating and disguising the Individual Defendants' violations of law, including breaches of fiduciary duty, and failing to report the same. Moreover, multiple the Individual Defendants violated the Code of Conduct by engaging in insider trading. In further violation of the Code of Conduct, the Audit Committee Charter, the Individual Defendants failed to maintain internal controls, failed to maintain the accuracy of Company records and reports, failed to comply with applicable laws and

regulations, and failed to conduct business in an honest and ethical manner.

53. In violation of the Audit Committee Charter, members of the Audit Committee conducted little, if any, oversight of Micron's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty.

**SUBSTANTIVE ALLEGATIONS**

54. Micron designs, develops, manufactures, and sells memory and storage products, including, *inter alia*, DRAM, NAND, NOR, and HBM semiconductor devices. Micron's memory and storage products are sold in various markets, with sales reported across multiple of its business units, including the Compute and Networking Business Unit ("CNBU"), Mobile Business Unit ("MBU"), Embedded Business Unit ("EBU"), and Storage Business Unit ("SBU").

55. Micron's DRAM products are semiconductor devices that have low latency that provide high-speed data retrieval with a variety of performance characteristics. DRAM products lose content when power is turned off—*i.e.*, are "volatile"—and are mostly used in the data center, client PC, graphics, industrial, and automotive markets. The Company's HBM products are a type of DRAM product that can achieve a higher bandwidth while consuming less power compared to other memory types. According to the Company, this makes HBM devices ideal for applications that require high data throughput and energy efficiency, such as AI applications and high-performance computing.

56. NAND products are non-volatile, re-writeable semiconductor storage devices that provide high-capacity, low-cost storage with a variety of performance characteristics. NAND is used in SSDs for the data center, client PC, consumer, automotive, and removable storage markets.

57.     NOR products are non-volatile, re-writable semiconductor memory devices that provide fast read speeds. NOR is commonly used for reliable code storage and for frequently changing small data storage.

58.     Micron's sales in consumer markets include sales of various products by different business units of the Company. For example, the Company's CNBU products are incorporated into gaming consoles and PC graphics cards; MBU products are incorporated into smartphones and other mobile devices; EBU products are incorporated into digital home assistants, video cameras, and home networking devices; and SBU products are incorporated into PCs. Examples of memory and storage products for consumers include, *inter alia*, NAND flash memory devices, such as SSD cards and flash drives.

59.     As Micron has noted in its regulatory filings, "[t]he memory and storage industry environment deteriorated sharply in the fourth quarter of 2022 and throughout 2023 due to weak demand in many end markets combined with global and macroeconomic challenges and lower demand resulting from customer actions to reduce inventory levels[,]" which "led to significant reductions in average selling prices for both DRAM and NAND and bit shipments for DRAM, resulting in declines in revenue across all [of Micron's] business segments and nearly all [of its] end markets."  Throughout the Relevant Period, however, Defendants repeatedly assured investors that demand for Micron's products, including its consumer-oriented and NAND products, was recovering, as well as assured investors that the Company was on track for record revenues in its fiscal year 2025 as a result of the foregoing and, *inter alia*, AI-related tailwinds for its HBM products.

60.     On September 28, 2023, the day after Micron issued a press release during after-market hours announcing its fiscal fourth quarter and full year 2023 results. The press release

quoted Defendant Mehrotra as stating, in relevant part:

> During fiscal 2023, amid a challenging environment for the memory and storage industry, Micron sustained technology leadership, launched a significant number of leading-edge products, and took decisive actions on supply and cost Our 2023 performance positions us well as a market recovery takes shape in 2024, driven by increasing demand and disciplined supply. We look forward to record industry TAM [total addressable market] revenue in 2025 as AI proliferates from the data center to the edge.

61.     On October 6, 2023, Micron filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for its fiscal fourth quarter and year ended August 31, 2023 (the "2023 10-K"). With respect to the purported overall recovery of demand for Micron's products, the 2023 10-K stated, in relevant part:

> Ongoing demand growth, customer inventory normalization, and industry-wide supply discipline have set the stage for increased revenue, and improved pricing and profitability throughout fiscal 2024. As a result, pricing trends have started to improve and there were no write downs of inventories to net realizable value in the fourth quarter of 2023.

62.     The 2023 10-K also stated, in relevant part, that "demand for DRAM and NAND is improving as customer inventory levels continue to normalize and secular growth drivers remain intact[.]"

63.     Appended as exhibits to the 2023 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein certain of the Individual Defendants certified that the 2023 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report"; and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations, and cash flows of the [Company] as of, and for, the periods presented in this report[.]"

64.     On November 29, 2023, Micron filed the Proxy with the SEC, wherein Defendants solicited shareholder votes in favor of five proposals, including the re-election of Defendants Beyer, Dugle, Gomo, Haynesworth, McCarthy, Mehrotra, and Wright, and non-binding approval of certain executive compensation.

65.     The Proxy stated that Micron had "adopted a Code of Business Conduct and Ethics that is applicable to all our directors…"

66.     The Proxy states that "The Board has delegated primary oversight of our enterprise risk management process to the Audit Committee, which conducts reviews of our risk assessment and enterprise risk management policies as described below, including overseeing the management of risks related to financial reporting and compliance."

67.     The Proxy states "Our Insider Trading Policy prohibits officers and directors from engaging in speculative transactions involving the Company's securities, including short sales or puts, calls or other options on the Company's common stock."

68.     The Proxy asked shareholders to ratify the compensation paid to the Company's named executive officers.

69.     In connection with these awards, the Proxy states that "a significant portion of the compensation should be variable (such as performance-based incentives and incentives tied to the performance of the Company and its Common Stock) as compared to fixed (such as base salary) …"

70.     The Proxy failed to disclose that the Company was beset with compliance problems that posed significant risks of harm, and that the Board lacked a system to oversee mission-critical compliance risks related to the accuracy of its public statements and insider trading.

71.     The Proxy also was false and misleading in that it failed to disclose that: (1) contrary to the Proxy's descriptions of the Board's risk oversight function and the Audit Committee's responsibilities, the Board and its Committees were not adequately exercising these functions, were causing or permitting the Company to issue false and misleading statements and violate securities laws, and thus the Defendants on the Board breached their fiduciary duties; and (2) the Defendants on the Board at that time who breached their fiduciary duties were improperly interested in increasing their unjust compensation.

72.     The false and misleading elements of the Proxy were material to stockholders in voting on the Board's proposals, particularly with respect to stockholders' consideration of the reelection of incumbent directors and the approval of executive compensation.

73.     On December 21, 2023, Micron filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the first quarter of its fiscal year 2024 (the "1Q24 10-Q"). With respect to the purported overall recovery of demand for Micron's products, the 1Q24 10-Q stated, in relevant part:

> For the first quarter of 2024, improving demand growth driven in part by deployment of [AI], customer inventory normalization, and industry-wide supply discipline, resulted in an improved industry supply and demand balance. As a result, we have experienced improvements in pricing and margins.

74.     The 1Q24 10-Q also stated, in relevant part, that "for the first quarter of 2024 as compared to the fourth quarter of 2023 . . . MBU revenue increased 7% primarily due to increases in average selling prices and NAND bit shipments, driven by improved end market demand."

75.     On March 21, 2024, Micron filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the second quarter of its fiscal year 2024 (the "2Q24 10-Q"). With respect to the purported overall recovery of demand for Micron's products, the 2Q24 10-Q stated, in relevant part:

> For the first six months of 2024, increasing demand growth, driven in part by deployment of [AI] and mostly normal customer inventories, combined with industry-wide supply discipline, resulted in an improved industry supply and demand balance. As a result, we have experienced improvements in pricing and margins in 2024.

76.     The 2Q24 10-Q also stated, in relevant part, that "for the second quarter of 2024 as compared to the first quarter of 2024 . . . SBU revenue increased 39% primarily due to increases in NAND average selling prices and bit shipments driven by strong demand across markets" and that "CNBU, MBU, and SBU operating income (loss) improved primarily due to increases in average selling prices as a result of improving conditions across most markets." (Emphases added.)

77.     On June 26, 2024, Micron issued a press release announcing its results for the third quarter of its fiscal year 2024, which quoted Defendant Mehrotra as stating, in relevant part, that Micron is "well positioned to deliver a substantial revenue record in fiscal 2025."

78.     The next day, Micron filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the third quarter of its fiscal year 2024 (the "3Q24 10-Q"). With respect to the purported overall recovery of demand for Micron's products, the 3Q24 10-Q stated, in relevant part:

> For the first nine months of 2024, increasing demand growth, driven in part by deployment of [AI] and mostly normal customer inventories, combined with industry-wide supply discipline, resulted in an improved industry supply and demand balance. As a result, we have experienced improvements in pricing and margins in 2024.

79.     The 3Q24 10-Q also stated, in relevant part, that "[f]or the third quarter of 2024 as compared to the third quarter of 2023, CNBU, MBU, and SBU operating income (loss) improved primarily due to increases in average selling prices . . . and increases in bit sales as a result of improving conditions across most markets in 2024"; and that "[f]or the first nine months of 2024

as compared to the first nine months of 2023, operating income (loss) improved for CNBU, MBU, and SBU primarily due to . . . increases in bit sales, and increases in MBU and SBU average selling prices as a result of improving conditions across most markets in 2024." (Emphases added.)

80.     On September 25, 2024, Micron issued a press release announcing its fiscal fourth quarter and full year 2024 results, which quoted Defendant Mehrotra as stating, in relevant part:

> We are entering fiscal 2025 with the best competitive positioning in Micron's history. We forecast record revenue in fiscal Q1 and a substantial revenue record with significantly improved profitability in fiscal 2025.

81.     On October 4, 2024, Micron filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for its fiscal fourth quarter and year ended August 29, 2024 (the "2024 10-K"). With respect to the purported overall recovery of demand for Micron's products, the 2024 10-K stated, in relevant part:

> Throughout 2024, we experienced substantial improvements in pricing and margins. Increasing demand growth, driven in part by deployment of AI and mostly normal customer inventories, combined with industry-wide supply discipline, resulted in an industry supply and demand balance that substantially improved from 2023 conditions. We executed well on pricing and improved our financial performance significantly from the start of the year. We are exiting the year with excellent momentum and an industry-leading product portfolio.

82.     With specific respect to the purported recovery of demand for Micron's MBU products, including consumer products, the 2024 10-K stated, in relevant part:

> The proliferation of smartphones, tablets, and other mobile devices continues to increase the demand for memory chips. These devices require high-performance memory to support various applications, from gaming to productivity. Smartphones offer tremendous potential for personalized AI capabilities that offer greater security and responsiveness when executed on the device. Enabling these on-device AI capabilities is driving increased memory and storage capacity needs and increasing demand for new value-add solutions.

83.    The statements detailed above were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made and/or allowed others to make false and/or misleading statements and/or failed to disclose that: (i) Defendants did not maintain sufficient internal controls; (ii) demand for Micron's products in consumer markets, especially the Company's NAND products, had significantly deteriorated; (iii) accordingly, Defendants had overstated the extent to which demand for Micron's products had recovered, particularly in consumer markets and for its NAND products, and/or had overstated the sustainability of demand for such products, as well as the normalization of inventory for such products; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

84.    In addition, Defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required Micron to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Defendants' failures to disclose, *inter alia*, that demand for Micron's products in consumer markets, especially the Company's NAND products, had significantly deteriorated, violated Item 303 because these issues represented known trends or uncertainties that were likely to have a material unfavorable impact on the Company's business and financial results.

85.    On December 18, 2024, Micron issued a press release announcing its financial results for the first quarter of its fiscal year 2025 (the "1Q25 Earnings Release"). Among other items, the Company reported a greater-than-expected revenue decline in NAND flash memory for the quarter, as well as issued disappointing guidance for the second quarter of its fiscal year

2025, including adjusted earnings between $1.33 and $1.53 per share, well below the $1.92 per share estimate; sales between $7.7 billion and $8.1 billion, with the midpoint well below the $8.99 billion estimate; and adjusted gross margins between 37.5% and 39.5%, well below the 41.3% estimate. In addition, Defendant Mehrotra, as quoted in the 1Q25 Earnings Release, disclosed that "consumer-oriented markets are weaker in the near term[.]"

86.     The next day, multiple analysts lowered their price targets for Micron stock, citing the Company's disappointing guidance for the second quarter of its fiscal year 2025, while noting significant weakness in demand in its consumer markets, especially for its NAND products. For example, in reducing its price target from $135 to $125, UBS wrote that Micron's fiscal second quarter 2025 "[g]uidance was below even the most bearish bogeys . . . with the company citing ongoing malaise in consumer markets - especially PC - which is hurting the NAND business in particular." Similarly, in reducing its price target to $110 from $125 and downgrading Micron stock to a "Neutral" rating from a "Buy" rating, Bank of America wrote that "weakness in PC and phone markets are putting downward pressure on memory pricing, especially in NAND." Likewise, in reducing its price target to $98 from $114, Morgan Stanley wrote that "NAND weakness [had] take[n] its toll[,]" noting that "Micron guided revenue below expectations driven mostly by revenue decline in NAND[,]" that "NAND will drive most of the revenue decline in February, which implies a sequential decline of about 20% in revenue[,]" and that "Micron has very clearly decided that NAND is oversupplied, cutting capex, cutting back on wafer starts by about 15%, and preparing for a sustained period of weak demand."

87.     Following the 1Q25 Earnings Release and reduced-price targets issued by analysts for Micron stock, the Company's stock price fell $16.81 per share, or 16.18%, to close at $87.09 per share on December 19, 2024.

88.     Micron's recovery from the sharply deteriorated memory and storage industry environment that occurred in the fourth quarter of 2022 and throughout 2023 due to weak demand was of particular importance to Defendants and Micron investors. Accordingly, as exemplified by Defendants' materially false and misleading statements made during the Relevant Period as alleged herein, Defendants fed a narrative of ongoing recovery in demand for Micron's products, as well as promised record performance results in the Company's fiscal year 2025, to investors in an effort to maintain artificially high prices for the Company's common stock price.

89.     During the Relevant Period, Defendant Mehrotra sold 690,284 shares of Micron common stock at significantly inflated prices under highly suspicious circumstances following the misappropriation of MNPI for total proceeds of over $70 million.

90.     Additionally, according to the Company's annual report for the year ended August 29, 2024, filed with the SEC on Form 10-K on October 4, 2024, Micron spent over $300 million on share repurchases in 2024, while the price of the Company's common stock was artificially inflated as a result of these false and misleading statements issued, or caused to be issued by the Individual Defendants. As a result, Micron was damaged through its repurchases of Company common stock at prices artificially inflated by the materially false and misleading statements.

91.     According to the Company's Current Report, filed on Form 8-K on August 7, 2024, "[o]n December 21, 2022, the Company disclosed the temporary suspension of the Repurchase Program as a result of the industry downturn. In light of improved conditions, on August 7, 2024, the Company determined that repurchases may resume…"

92.     According to the Company's October 4, 2024 10-K, between June 28 and July 25, 2024, the Company repurchased 25,931 shares of its own common stock at an average price per share of approximately $133.55 for a total cost of approximately $3,461,788.50.

93.     As the Company's stock was worth only $87.09 per share (as of December 19, 2024), the Company overpaid by approximately $1,203,457.71 for repurchases of its own stock between June 28 and July 25, 2024.

94.     According to the Company's October 4, 2024 10-K, between July 25 and August 29, 2024, the Company repurchased 3,223,518 shares of its own common stock at an average price per share of approximately $93.39 for a total cost of approximately $301,044,346.

95.     As the Company's stock was worth only $87.09 per share (as of December 19, 2024), the Company overpaid by approximately $20,308,163.40 for repurchases of its own stock between July 25 and August 29, 2024.

96.     Thus, in total, during the Relevant Period, the company overpaid for repurchase of its own stock by over $21.5 million.

## HARM TO THE COMPANY

97.     As a direct and proximate result of the Individual Defendants' misconduct outlined herein, the Company has lost and expended, and will continue to lose and expend, millions of dollars.  These costs include, *inter alia*: (i) legal fees in connection with the Securities Class Action, including attorneys', accountants', experts', and investigators' fees; (ii) costs to implement measures to remedy the material weaknesses in Micron's internal controls over financial reporting; and (iii) substantial compensation and benefits paid to the Individual Defendants, who breached their fiduciary duties to the Company.

98.     Such expenditures include the company's overpayment of over $21.5 million for repurchases of its own stock during the period when the Company's stock price was artificially inflated due to the false and misleading statements discussed above.

99.     As a direct and proximate result of the Individual Defendants' misconduct and

26

breach of fiduciary duties, the Company has also suffered and will continue to suffer a loss of reputation and goodwill, and a liar's discount regarding Micron's stock in the future.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

100.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breach of fiduciary duties by the Individual Defendants.

101.    Micron is named solely as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

102.    Plaintiff is a current shareholder of Micron and was a continuous shareholder of the Company during the period of the Individual Defendants' wrongdoing alleged herein. Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

103.    At the time this action was commenced, the eight-member Board was comprised of Defendants Mehrotra, Beyer, Dugle, Gomo, Haynesworth, McCarthy, Swan, and Wright (the "Director Defendants" or the "Demand Board").  Accordingly, Plaintiff is only required to show that four members of the Demand Board cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.  As detailed below, demand is futile as to each member of the Demand Board.

104.    As an initial matter, the Company concedes that Mehrotra, the Company's President, CEO, and Chair of the Board lacks independence.  Mehrotra is also named as a defendant in the Securities Class Action and made improper insider sales of Company stock on the basis on MNPI.

105.    Each of the Director Defendants are incapable of making an independent and

disinterested decision to institute and vigorously prosecute this action, including because they face a substantial likelihood of liability, and so demand on the Board to institute this action is not necessary because such a demand would have been a futile act.

106.    Each of the Director Defendants face a substantial likelihood of liability as a result of the scheme they engaged in knowingly or recklessly to make and/or cause the Company to make false and misleading statements and omissions of material facts, which renders them unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme.

107.    Demand is excused as to all of the Director-Defendants because each of them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme they engaged in knowingly or recklessly to make and/or cause the Company and others to make false and misleading statements and omissions of material facts, to cause the Company to overpay by over $21.5 million for repurchase of its own stock, and as a result of their illegal insider sales and intentional or reckless approval of the stock offerings at artificially inflated prices during the Relevant Period. The Director Defendants, as alleged herein, were aware or should have been aware of the misinformation being spread by the Company and yet approved the repurchases. This renders the Director-Defendants unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme. Thus, the Director-Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

108.    In complete abdication of their fiduciary duties, the Director-Defendants either knowingly or recklessly caused or permitted Micron to issue materially false and misleading statements. Specifically, the Director Defendants made or permitted the issuance of false

statements and/or failed to disclose that: (i) Defendants did not maintain sufficient internal controls; (ii) demand for Micron's products in consumer markets, especially the Company's NAND products, had significantly deteriorated; (iii) accordingly, Defendants had overstated the extent to which demand for Micron's products had recovered, particularly in consumer markets and for its NAND products, and/or had overstated the sustainability of demand for such products, as well as the normalization of inventory for such products; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

109.    The Director Defendants also failed to establish or maintain a system to oversee mission-critical compliance risks respecting compliance, inventory, demand, and the accuracy of its public reports.

110.    Moreover, the Director-Defendants caused the Company to fail to maintain internal controls. As a result of the foregoing, the Director-Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested or independent, and demand upon them is futile, and thus excused.

111.    In violation of the Audit Committee Charter, members of the Audit Committee conducted little, if any, oversight of Micron's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, and violations of the Exchange Act. Moreover, in further violation of the Audit Committee Charter, the Audit Committee Defendants failed to compliance and the adequacy of the Company's internal controls, including the Company's internal control over financial reporting and disclosure controls and procedures.

112.    The Director Defendants, together and individually, violated and breached their

fiduciary duties of candor, good faith, and loyalty. Specifically, the Director Defendants knowingly approved and/or permitted the wrongs alleged herein and participated in efforts to conceal those wrongs. The Director Defendants authorized and/or permitted the Company to violate the law, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein. Accordingly, the Director Defendants could not fairly and fully prosecute such a suit even if they instituted it.

113.    The Director Defendants either knowingly or recklessly issued or caused the Company to issue the materially false and misleading statements alleged herein. The Director Defendants knew of the falsity of the misleading statements at the time they were made. As a result of the foregoing, the Director Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

114.    As members of the Board charged with overseeing the Company's affairs, each of the Director Defendants had knowledge, or the fiduciary obligation to inform themselves, of information pertaining to the Company's core operations and the material events giving rise to these claims. Specifically, as Board members of Micron, the Director Defendants knew, or should have known, the material facts surrounding Micron's compliance with securities laws and the accuracy of its public statements.

115.    Demand in this case is excused because each of the directors derive hundreds of thousands of dollars annually from the Company, control the Company, and are indebted to each other. These and other conflicts of interest have precluded the current directors from calling into question the Director Defendants' conduct or taking any remedial actions to redress the conduct alleged herein. Accordingly, the Director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action due to their close

relationship with, and indebtedness to, the Director Defendants named herein.

116.    All of the Director Defendants are subject to the Company's Code of Conduct.  The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the members of the Demand Board to also adhere to Micron's Code of Conduct. The Director Defendants violated the Code of Conduct because they knowingly or recklessly allowed the Company to violate the law.  All of the Director Defendants violated the Code of Conduct, including by refusing to take action to address the misconduct alleged herein. As such, the entire Demand Board faces a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

117.    None of the Director Defendants have taken any remedial action to investigate or redress the Company's losses and exposure due to their and the other Individual Defendants' misconduct.

118.    The Director Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds *i.e*., monies belonging to the stockholders of Micron. If there is a directors' and officers' liability insurance policy covering the Director Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Director Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Director Defendants were to sue themselves or certain officers of Micron, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the

Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

119.     If there is no directors' and officers' liability insurance, then the Director Defendants will not cause Micron to sue the Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event as well.

120.     Accordingly, a pre-suit demand on the current Board comprised of the Director Defendants is futile and excused.

### COUNT I

**Against the Director Defendants for Violations of § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a) and Rule 14a-9 (17 C.F.R.§240.14a-9)**

121.     Plaintiff incorporates by reference and repeats and realleges ¶¶1-120, as if fully set forth herein.

122.     Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

123.     Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."

32

17 C.F.R. § 240.14a-9.

124.     Under the direction and watch of the Director Defendants, the Proxy failed to disclose, *inter alia*: (1) contrary to the Proxy's descriptions of the Board's risk oversight function and the Audit Committee's responsibilities, the Board and its committees were not adequately exercising these functions, were causing or permitting the Company to issue false and misleading statements, and thus the Defendants on the Board breached their fiduciary duties; and (2) the Defendants on the Board at that time who breached their fiduciary duties were improperly interested in increasing their unjust compensation.

125.     The Proxy further failed to disclose that the Company was violating securities laws, issuing false and misleading statements in violation of securities laws, and had failed to establish or maintain adequate internal controls, including over the accuracy of public statements and massive insider trading. As a result, the Proxy was materially false and misleading.

126.     In the exercise of reasonable care, these Defendants should have known that the statements contained in the Proxy were materially false and misleading.

127.     The misrepresentations and omissions in the Proxy were material to Company stockholders in voting on the Proxy. The misrepresentations and omissions were material to Company stockholders in voting on the matters set forth for stockholder determination in the Proxy, including but not limited to the reelection of certain Director Defendants and the approval, on an advisory basis, of the compensation of the Company's executives.  The Proxy was an essential link in defendants' insulation of the awards from stockholder challenge.

128.     The false and misleading elements of the Proxy led to, among other things, the election of the Defendants Beyer, Dugle, Gomo, Haynesworth, McCarthy, Mehrotra, and Wright, which allowed them to continue to breach their fiduciary duties to Micron.

129.    The Company was damaged as a result of the defendants' material misrepresentations and omissions in the Proxy.

130.    No adequate remedy at law exists for Plaintiff by and on behalf of the Company.

## COUNT II

### Against the Individual Defendants for Violations of § 10(b)
### of the Exchange Act, 15 U.S.C. § 78(j), and Rule 10b-5, 17 C.F.R. § 240.10b-5

131.    Plaintiff incorporates by reference and realleges ¶¶1-120, as if fully set forth herein.

132.    The Individual Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

133.    The Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the materially false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

134.    The Individual Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (iii) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated.

135.    The Individual Defendants acted with scienter because they: (i) knew that the public documents and statements issued or disseminated in the name of Norfolk Southern were materially false and misleading; (ii) knew that such statements or documents would be issued or

34

disseminated to the investing public; and (iii) knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws.

136.     The Individual Defendants, by virtue of their receipt of information reflecting the true facts of Micron, their control over, and/or receipt and/or modification of Micron's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Micron, participated in the fraudulent scheme alleged herein.

137.     As a result of the foregoing, the market price of Micron common stock was artificially inflated during the relevant time period.

138.     According to the Company's annual report for the year ended August 29, 2024, filed with the SEC on Form 10-K on October 4, 2024, Micron spent over $300 million on share repurchases in 2024, while the price of the Company's common stock was artificially inflated as a result of these false and misleading statements issued, or caused to be issued by the Individual Defendants. As a result, Micron was damaged through its repurchases of Company common stock at prices artificially inflated by the materially false and misleading statements.  In total, during the Relevant Period, the company overpaid for repurchase of its own stock by over $21.5 million.

139.     In addition, as a result of the wrongful conduct alleged herein, the Company has suffered significant damages, including the costs and expenses incurred in defending itself in the Securities Class Action and reputational harm. The Individual Defendants, through their violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, have caused the Company to expend millions of dollars in the repurchase of Micron stock at artificially inflated prices and have exposed the Company to millions of dollars in potential class-wide damages in

the Securities Class Action.

## COUNT III

**Against the Individual Defendants for Violation of §20(a) of the Exchange Act**

140.    Plaintiff incorporates by reference and realleges ¶¶1-120, as if fully set forth herein.

141.    The Individual Defendants acted as controlling persons of the Company within the meaning of §20(a) of the Exchange Act. By virtue of their positions of control within the Company, the Individual Defendants had the authority to cause the Company to issue materially false and misleading statements, and to repurchase Micron at prices artificially inflated by those materially false and misleading statements.

## COUNT IV

**Against the Individual Defendants for Breach of Fiduciary Duties**

142.    Plaintiff incorporates by reference and realleges ¶¶1-120, as if fully set forth herein.

143.    The Individual Defendants owed the Company fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

144.    The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

145.    The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties.  Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise

36

failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

146.    Throughout the Relevant Period, the Individual Defendants issued false and misleading statements failed to disclose material adverse facts about the Company's business and operations.

147.    In breach of their fiduciary duties owed to Micron, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements and omissions of material fact that failed to disclose, *inter alia*, that: (i) Defendants did not maintain sufficient internal controls; (ii) demand for Micron's products in consumer markets, especially the Company's NAND products, had significantly deteriorated; (iii) accordingly, Defendants had overstated the extent to which demand for Micron's products had recovered, particularly in consumer markets and for its NAND products, and/or had overstated the sustainability of demand for such products, as well as the normalization of inventory for such products; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

148.    The Individual Defendants also failed to establish or maintain a system to oversee mission-critical compliance risks related to compliance, inventory, demand, and the accuracy of its public reports.

149.    In further breach of their fiduciary duties, the Individual Defendants willfully or recklessly caused the Company to repurchase millions of shares of its own common stock at artificially inflated prices before the fraud was exposed.

150.    The Individual Defendants failed to correct and/or caused the Company to fail to

correct the false and misleading statements and/or omissions of material fact, which renders them personally liable to the Company for breaching their fiduciary duties.

151.    As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

152.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.  As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill.  Such damage includes, among other things, costs incurred in defending itself in the Securities Class Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

<u>COUNT V</u>

**Against Defendant Mehrotra for Insider Selling**

153.    Plaintiff incorporates by reference and realleges ¶¶1-120, as if fully set forth herein.

154.    During the Relevant Period, Mehrotra held positions with the Company that provided him access to MNPI concerning Micron, including financial condition and future business prospects.  Notwithstanding his duty to refrain from trading in Micron's common stock under the circumstances, Mehrotra sold his holdings in the Company at artificially inflated prices prior to the disclosure of the true state of the Company's finances and prospects.

155.    The insider sales were not part of any regular pattern of sales for Mehrotra and were suspicious in terms of timing and amount.

156.    The information Mehrotra traded on was MNPI concerning the Company's

financial condition and future business prospects.  The information was a proprietary asset belonging to Micron, which Mehrotra misappropriated to his own benefit when he sold Micron stock.  At the time of his stock sales, Mehrotra were aware that the Company's finances and prospects were not as favorable as publicly represented, which when disclosed to the market would cause the inflated price of the Company's common stock to significantly decrease. Mehrotra's sales of stock while in possession and control of this MNPI was a breach of his fiduciary duty of loyalty.

157.    Plaintiff, on behalf of Micron, have no adequate remedy at law.

## COUNT VI

### Against the Individual Defendants for Unjust Enrichment

158.    Plaintiff incorporates by reference and realleges ¶¶1-120, as if fully set forth herein.

159.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Micron.

160.    The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Micron that were tied to the performance or artificially inflated valuation of Micron, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

161.    Plaintiff, as a shareholder and a representative of Micron, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

162.    Plaintiff on behalf of Micron has no adequate remedy at law.

## COUNT VII

### Against the Individual Defendants for Abuse of Control

163.    Plaintiff incorporates by reference and realleges ¶¶1-120, as if fully set forth herein.

164.    The Individual Defendants misconduct alleged herein constituted an abuse of their control over the Company, for which they are legally liable.

165.    As a direct and proximate cause of the Individual Defendants' abuse of control, the Company has sustained substantial damages.

166.    Plaintiff on behalf of the Company has no adequate remedy at law.

## COUNT VIII

### Against the Individual Defendants for Gross Mismanagement

167.    Plaintiff incorporates by reference and realleges ¶¶1-120, as if fully set forth herein.

168.    The Individual Defendants, either directly or through aiding and abetting, failed to reasonably exercise their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the Company in a manner consistent with the expectations and operations of a publicly held corporation.

169.    As a direct and proximate result of the Individual Defendants' gross mismanagement alleged herein, the Company has sustained and will continue to sustain substantial damages.

170.    Plaintiff on behalf of the Company has no adequate remedy at law.

## COUNT IX

### Against the Individual Defendants for Waste of Corporate Assets

171.    Plaintiff incorporates by reference and realleges ¶¶1-120, as if fully set forth herein.

172.    The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the time period in issue.  It resulted in continuous, connected, and ongoing harm to the Company.

173.    As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (i) paying and colleting excessive compensation and bonuses; and (ii) incurring potentially millions of dollars of legal liability and/or legal costs, including defending the Company and its officers against the Securities Class Action.

174.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

175.    Plaintiff on behalf Micron has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.    Declaring that the Individual Defendants breached their fiduciary duties;

B.    Awarding money damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties;

C.    Directing Micron to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Micron and its stockholders from a repeat of the damaging events described herein, including, but not limited to:

•    implementing policies and systems to ensure compliance and Board oversight of

41

compliance with relevant laws, regulations, and contracts;

• strengthening the Board's supervision of operations and compliance with applicable state and federal laws and regulations;

• strengthening the Company's internal reporting and financial disclosure controls;

• developing and implementing procedures for greater shareholder input into the policies and guidelines of the Board;

D. Awarding damages sustained by the Company as a result of the breaches of fiduciary duties set forth above, together with pre- and post-judgment interest, from each of the Defendants, jointly and severally;

E. Ordering immediate disgorgement of all profits, benefits, and other compensation obtained by the Officer Individual Defendants as a result of their breaches of fiduciary duties and unjust enrichment ;

F. Awarding to Micron restitution from the Individual Defendants

G. Awarding punitive damages;

H. Declaring judgment against all Defendants and in favor of the Company for extraordinary and injunctive relief as permitted by law and/or equity; and

I. Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

J. Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: January 21, 2025

**COOK LAW, P.A.**

By:

*/s/ William J. Cook*
William J. Cook, Esq.
Florida Bar No. 986194
610 East Zack Street, Suite 505
Tampa, FL 33602
(813) 489-1001
wcook@cooklawfla.com

**RIGRODSKY LAW, P.A.**
Seth D. Rigrodsky
Timothy J. MacFall
Vincent A. Licata
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Facsimile: (302) 654-7530
sdr@rl-legal.com
tjm@rl-legal.com
vl@rl-legal.com

**GRABAR LAW OFFICE**
Joshua H. Grabar, Esq.
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Tel:  267-507-6085
Email: jgrabar@grabarlaw.com

*Counsel for Plaintiff*